Plaintiff brought suit in Tuolumne County against C.S. Fitch for $1,289 upon an alleged account due plaintiff from defendants, for services rendered and money advanced at the special instance and request of defendants. This complaint was filed July 26, 1920. A demurrer by both defendants was filed July 26, 1923. Defendant M.Q. Fitch answered on June 11, 1926. Said answer denies all the allegations of the complaint. As a separate answer and defense to said complaint, defendant M.Q. Fitch alleged that C.S. Fitch died August 19, 1923, and that the personal representative of the deceased has not been made a party to the action, and that no claim has been presented to the personal representative of the deceased, for the claim of plaintiff, and that, therefore, there is a nonjoinder of parties defendant. For another defense M.Q. Fitch plead the bar of section 337 of the Code of Civil Procedure, and also separately subdivisions 1, 2, and subdivision 3 thereof. For still another defense said defendant plead section 339 of the Code of Civil Procedure, and separately specified subdivisions 1 and 2 of said section.
The action was tried without a jury and on December 31, 1926, findings and judgment were filed and entered against the plaintiff. The plaintiff appeals to this court from said judgment. There are no findings upon the first separate defense, nor upon the defense of the statute of limitations. The findings of the trial court are upon the issue tendered by the denial of all the allegations of the complaint. No findings were made as to the other special defenses. Judgment was for the defendant M.Q. Fitch.
Appellant presents three points upon which he contends the judgment should be reversed: 1. That there was no finding as to the statute of limitations; 2. That the finding *Page 12 
that M.Q. Fitch is not indebted to plaintiff is not supported by the evidence; 3. That on the facts disclosed by the evidence plaintiff is entitled to judgment.
[1] We can see no reason for a reversal of this judgment because the trial judge did not find upon the statute of limitations pleaded. In view of the finding of the court that there was no indebtedness, it was unnecessary to find upon the issue tendered by a plea of these statutes.
The same reasoning applies to the first separate defense. The finding that there was no claim whatsoever against M.Q. Fitch rendered unnecessary a finding as to nonjoinder.
[2] The second and third contentions of the appellant are, in substance, but one question, namely, was there anything due appellant from the defendant M.Q. Fitch?
The facts briefly stated were as follows: C.S. Fitch and M.Q. Fitch were husband and wife. Plaintiff began in the year 1908 working for C.S. Fitch, who was then conducting the City Hotel, at the town of Sonora, in Tuolumne County. At about that time the City Hotel, both the real estate and the personal property used in and about this hotel, belonged to Mrs. Fitch, Sr., the mother of C.S. Fitch. The "business" then being conducted in the hotel property and with and said hotel furniture and fixtures was owned by C.S. Fitch. Some time shortly before plaintiff began working for C.S. Fitch, Mrs. Fitch, Sr., by a deed of trust, conveyed the said hotel and the personal property used therein to Mrs. M.Q. Fitch, in trust for the children of C.S. Fitch and his said wife Mrs. M.Q. Fitch. The exact terms and conditions of this trust are not made to appear. This trust deed was recorded about July, 1910. At about this last-named date an account was opened in a local bank at Sonora in the name of May Fitch, this being the defendant herein, M.Q. Fitch. Into this bank account there was deposited all the earnings of the hotel venture. Mrs. M.Q. Fitch would draw all checks against this deposit account, both for the maintenance of herself and family and for the conduct of the hotel business. At the time this system of depositing the earnings in the name of May Fitch began there was already owing to plaintiff a sum largely in excess of the sum now sued for. C.S. Fitch continued to run the business down to August 19, 1923, at which time *Page 13 
he died. His personal representative was not made a party and no claim was presented against his estate. Mrs. M.Q. Fitch testified that up to the time of the death of her husband she never had anything whatsoever to do with the hotel business, either as owner or manager. She further testified that she permitted the earnings of the hotel to be deposited in her name, at the request of and for the accommodation of her husband, C.S. Fitch. The record does not disclose any withdrawals of moneys from the bank for her personal use, except for such bills as her husband, C.S. Fitch, would be legally obligated to pay. There was, however, an exception in this way: C.S. Fitch had made some small speculations in mines and in lands; these investments, according to the testimony, yielded no returns, and these properties had been conveyed to Mrs. M.Q. Fitch. After the death of C.S. Fitch, Mrs. M.Q. Fitch continued the business as it had been conducted by C.S. Fitch prior to his death.
Plaintiff contends that M.Q. Fitch and C.S. Fitch were jointly conducting the business at all times. Plaintiff continued as an employee at the hotel until shortly after the death of C.S. Fitch. In the later years of plaintiff's employment he personally took out his wages as they became due, crediting them upon his account; and his present contention is that these several credits last referred to were applicable to the first items of his account against C.S. Fitch, and that since the time of the deposit of funds in the name of May (M.Q.) Fitch, and up to the death of C.S. Fitch, the later earnings of plaintiff were obligations of M.Q. Fitch jointly with her husband. After this suit was brought, and before the death of C.S. Fitch, the plaintiff upon demand furnished a bill of particulars in this action. This bill of particulars corresponds with an account-book of the plaintiff which showed an account of plaintiff against "C.S. Fitch" from July 1, 1908, until January, 1912, at which time his account-book was by plaintiff changed to show an account against "C.S. and M.Q. Fitch, Trustee, and M.Q. Fitch." In April, 1912, plaintiff again changed his account to read "C.S. Fitch and M.Q. Fitch Trustee, and M.Q. Fitch, successors to C.S. Fitch."
As we view this record it became a question of fact whether Mrs. M.Q. Fitch was a partner in the business from the beginning, *Page 14 
or whether Mrs. Fitch, either directly or by implication, gave permission for the application of later payments of salary of the plaintiff as credits to the items of the bill of plaintiff against C.S. Fitch. The trial court heard all the evidence in the case, including the testimony of the plaintiff above referred to, and determined both these disputed points in favor of the defendant.
Appellant has included in his opening brief the opinion of the judge of the trial court, and we quote therefrom the following portion thereof, and we adopt the same as our opinion herein:
"At the time he (the plaintiff) ceased his employment in 1910 there was due him for his services as clerk according to his book of accounts the sum of $1168.60. During the year he was away from the hotel he paid the following bills for C.S. Fitch and entered said items in his book as a charge against C.S. Fitch, to-wit: `B. Meyers, $37.75; J. Michel Co., $118.29; P.C.C.T. Assn., $22.50, and J.J. Burkett Co., $19.10, or a total of $197.64.' . . . At the time Mrs. Fitch opened said bank account and began to have the moneys from the business deposited in her name, there was due and owing to the plaintiff according to his book of accounts, Plaintiff's Exh. No. 1, the sum of $1,168.60 as above stated. This balance together with the $197.64 is a part of the claim sued upon; in other words, it was carried on in the account against M.Q. Fitch. There is nothing in the evidence to in any way show that Mrs. Fitch ever assumed this liability or ever agreed to do so, nor is any reasonable explanation offered by plaintiff for carrying this item into the latter account other than his conclusion that she was a partner, owner of or principal in the business from the beginning, a statement which is not supported by the evidence. His own book of accounts, plaintiff's exhibit No. 1, would tend to show to the contrary. The account in this exhibit was opened at the time of his entering the employment of C.S. Fitch and is a full and complete account of the entire claim and all the transactions incident thereto. This book is silent evidence of what was truly in the mind of the plaintiff at the time he made the entries, and I think reveals the true facts so far as the ownership of the business may have been concerned. An inspection of this exhibit *Page 15 
shows that plaintiff opens his account solely against C.S. Fitch on July 1, 1908, and the account is thereafter carried in that name until the beginning of January, 1912, where the name of the debtor is changed to read `C.S. M.Q. Fitch, Trustee, and M.Q. Fitch' and is then carried under that heading until April, 1912, when the account was changed to read `C.S. Fitch and M.Q. Fitch, Trustee, and M.Q. Fitch successors to C.S. Fitch.' If these headings of the account have any meaning so far as showing who plaintiff considered at the time to be the debtors and I presume they do or it is one of the presumptions of evidence; "that the ordinary course of business has been followed.' (Sec. 1963, subd. 20, Code Civ. Proc.) It is reasonable for the court to infer that C.S. Fitch was the true debtor and solely so, at the time prior to the making of the change. There is also a notation in this exhibit at page 25, that the accounts which he paid for Mr. Fitch totaling $197.64 as above mentioned, were paid for C.S. Fitch. Having the above conclusions in mind let us see if there is anything due plaintiff. The amount of the claim sued for is $1282. From this amount we must deduct the $1168.60, plus the $197.64 as these items were carried into the account which the court finds Mrs. Fitch would be liable for, and we have a situation wherein the plaintiff has been paid so far as any legal liability rests upon the defendant M.Q. Fitch."
The judgment is affirmed.
Hart, J., and Finch, P.J., concurred.
A petition for a rehearing of this cause was denied by the district court of appeal on January 23, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 20, 1928.
All the Justices present concurred. *Page 16